[Cite as *State ex rel. Smoot v. KBO Inc.*, 2014-Ohio-2543.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Victor Smoot, | : | |
| Relator, | : | |
| v. | : | No. 13AP-903 |
| [KBO], Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 12, 2014

*Michael J. Muldoon*, for relator.

*Graydon Head & Ritchey LLP,* and *Everett L. Greene,* for respondent KBO, Inc.

*Michael DeWine*, Attorney General, and *Colleen C. Erdman*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Relator, Victor Smoot, filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant him permanent total disability ("PTD") compensation.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of

law.  The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3}  Counsel for Smoot has filed objections to the magistrate's decision.  Counsel for the commission has filed a memorandum in response.  Counsel for KBO, Inc., Smoot's former employer, a self-insured employer, has also filed a memorandum in response.  The case is now before the court for a full, independent review.

{¶ 4}  As noted in the magistrate's decision, Smoot has suffered three sets of injuries.  One set centers around injury to his neck.  One set involves his neck and back.  The third set involves his right wrist and thumb.  Smoot's treating physician sees Smoot as incapable of sustained remunerative employment.  A physician who examined Smoot at the request of KBO, Inc. reported otherwise.  The staff hearing officer ("SHO") who reviewed Smoot's application for PTD compensation found the employer's expert more credible.

{¶ 5}  The SHO reviewed the nonmedical or so-called *Stephenson* factors and noted Smoot is over 60 years of age and that age was a negative factor without being work-prohibitive.  *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).  The SHO's complete analysis is set forth in the magistrate's decision.

{¶ 6}  We do agree with our magistrate's analysis of the SHO's order.

{¶ 7}  We, therefore, overrule the objections to the magistrate's decision.  We adopt the findings of fact and conclusions of law contained in the magistrate's decision and deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

BROWN and KLATT, JJ., concur.

_____

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Victor Smoot, | : | |
| Relator, | : | |
| v. | : | No. 13AP-903 |
| [KBO], Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

### MAGISTRATE'S DECISION

### Rendered on March 18, 2014

*Michael J. Muldoon*, for relator.

*Graydon Head & Ritchey LLP,* and *Everett L. Greene,* for respondent KBO, Inc.

*Michael DeWine*, Attorney General, and *Colleen C. Erdman,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 8}  Relator, Victor Smoot, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.

<u>Findings of Fact</u>:

{¶ 9} 1. Relator has sustained three work-related injuries during the course of his employment with respondent KBO, Inc. ("employer") and his workers' compensation claims have been allowed for the following conditions:

> Claim # 03-887701 – Acute cervical sprain; scalp contusion.

> Claim # 04-823413 – Cervical sprain; herniated disc at the L5-S1 level of the lumbar spine.

> Claim # 06-854429 – Right wrist sprain/strain; right thumb sprain/strain; complete rupture of scapholunate ligament.

{¶ 10} 2. On May 15, 2013, relator filed his application for PTD compensation.

{¶ 11} 3. In support of his application for PTD compensation, relator filed the May 10, 2013 report of his treating physician David M. Grunstein, D.C. In that report, Dr. Grunstein noted relator's present complaints, identified the allowed conditions in his claims, provided his physical findings upon examination, concluded that relator had a 60 percent whole person impairment and that he was permanently and totally disabled.

{¶ 12} 4. Prior to authoring the May 10, 2013 report, Dr. Grunstein had completed a functional capacities evaluation dated April 27, 2013. On that form, Dr. Grunstein indicated that, in an 8-hour workday, relator could stand/walk for 2 to 3 hours, stand and sit at one time each for 10 to 20 minutes; in an 8-hour workday, relator could sit for 3 hours, and sit at one time for 20 to 30 minutes; could occasionally lift/carry up to 20 pounds; his left hand could be used for simple grasping and fine manipulation, but his right could not; relator could not use his feet for repetitive movement as in operating foot controls; and relator could never work above shoulder level, bend/twist/turn at his waist, squat, crawl, climb, or push/pull. Dr. Grunstein also noted that relator takes Vicodin for his pain and that this limited his cognitive function.

{¶ 13} 5. Relator was examined by Paul T. Hogya, M.D. In his July 9, 2013 report, Dr. Hogya identified the allowed conditions in relator's claims, identified the medical records which he reviewed, noted relator's current symptoms, provided his physical findings upon examination, and concluded that relator's allowed physical conditions had reached maximum medical improvement ("MMI"), that he would be capable of returning

to some form of sustained remunerative employment but would require some modest permanent restrictions, that he was capable of function in a light-duty capacity concerning his back, but that his right hand and wrist would limit him to sedentary work. He also noted that relator should avoid the use of vibrating and hand tools such as hammers and wrenches and that he was capable of using his right hand on a frequent basis for operating the telephone, keyboard and/or mouse.

{¶ 14} 6. Relator was also examined by James T. Lutz, M.D. In his July 29, 2013 report, Dr. Lutz identified the allowed conditions in relator's claims, provided the history of his present illness, provided his physical findings upon examination, and concluded that claimant had a 26 percent whole person impairment, and was capable of performing sedentary work.

{¶ 15} 7. Relator submitted the August 25, 2013 vocational report of Molly S. Williams who determined that relator was permanently and totally disabled, stating:

> I reviewed and formally adopt the factual findings as previously stated above. However, when all of the disability factors are correctly identified, stated, and considered: an individual unable to perform his customary past relevant work as a Truck Driver, both as he performed it and as it is normally performed within the national economy; an individual of advanced age (age fifty-five or over); an individual with a high school education completed in the remote past (1972); an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon the allowed physical conditions, as assessed by The Industrial Commission's Specialist, James T. Lutz, M.D., it is obvious that the claimant is permanently and totally disabled.

{¶ 16} 8. Relator's motion was heard before a staff hearing officer ("SHO") on October 9, 2013. The SHO first explained why the reports from Dr. Grunstein were not found to be persuasive, stating:

> In support of his application, Mr. Smoot has submitted two reports from Dr. Grunstein dated 04/27/2013 and 05/10/2013 respectively. The Staff Hearing Officer has reviewed both reports and finds them to be problematic.
>
> In his report dated 04/27/2013, Dr. Grunstein opined that the Injured Worker's functional capacities permit him in an

eight hour work day to stand and walk two to three hours, stand at one time for ten to 20 minutes and walk at one time for ten to 20 minutes. Dr. Grunstein further opined that in an eight hour work day the Injured Worker could sit for three hours and could sit at one time for 20 to 30 minutes. Dr. Grunstein further opined that the Injured Worker could lift and carry up to 20 pounds occasionally and that he could use his left hand for simple grasping and fine manipulation. Dr. Grunstein further opined that the Injured Worker could not use his right hand for either simple grasping or fine manipulation and that he could not use either foot for repetitive movement of foot controls.

In his report dated 05/10/2013, the Staff Hearing Officer notes that Dr. Grunstein failed to acknowledge that the Injured Worker's 2006 claim is also allowed for a complete rupture of the scapholunate ligament. Recourse to the body of the report itself does not find any reference to this allowed condition or to any surgery to treat it.

The Staff Hearing Officer finds that Dr. Grunstein's statement of the Injured Worker's remaining functional capacities is not consistent with his 05/10/2000 [sic] opinion that the Injured Worker is incapable of performing any sustained remunerative employment due to restrictions arising from the allowed conditions.

{¶ 17} Thereafter, the SHO discussed the reports of Drs. Lutz and Hogya, specifically noting their limitations and found that he was capable of working as follows:

The Injured Worker was examined 07/29/2013 at the request of the Industrial Commission of Ohio by Dr. James T. Lutz.

On physical examination, Dr. Lutz found the Injured Worker to be a well-developed male who appeared in no acute distress. Dr. Lutz noted that the Injured Worker ambulated with a mildly stiffened gait. Dr. Lutz found the Injured Worker's deep tendon reflexes of the lower extremities to be symmetrical with gross sensation appearing to be intact. Mr. Smoot was able to heel and toe walk without difficulty, but could only perform approximately a one-third normal squat.

Dr. Lutz also reviewed the reports of Dr. Grunstein dated 04/27/2013 and 05/10/2013. In the opinion of Dr. Lutz these reports are conflicting in that one report states Mr.

Smoot to be permanently and totally disabled while the other report "*generally*" places him in the light work capabilities category.

In the opinion of Dr. Lutz, the allowed conditions in the claims have reached maximum medical improvement with a resulting 26% whole person impairment. Dr. Lutz also opined in his narrative report and on an attached Physical Strength Rating form that the Injured Worker is physically capable of performing sedentary work.

Sedentary work is defined as meaning the ability to exert up to ten pounds occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

The Injured Worker was also examined at the request of the Self-Insuring Employer in this matter by Dr. Paul T. Hogya on 06/19/2013.

In his 07/09/2013 report, Dr. Hogya opined that the allowed conditions in the claim have reached maximum medical improvement. In the opinion of Dr. Hogya, based upon the herniated disc at L5-S1, the Injured Worker is capable of working sustained remunerative employment with restrictions: "*That means exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly in the course of lifting, carrying, pushing or pulling various objects. Sitting, standing and walking may be up to one hour at a time with an opportunity to change positions.*"

In the opinion of Dr. Hogya, the Injured Worker may drive automobiles and small pick-up trucks with automatic transmission for up to one hour at a time. In the opinion of Dr. Hogya, the Injured Worker is capable of occasionally squatting and kneeling as necessary. In the further opinion of Dr. Hogya, the Injured Worker may climb stairs and ramps on an occasional basis, such as entering and exiting buildings. With respect to the Injured Worker's right hand and wrist, in the opinion of Dr. Hogya, the Injured Worker should stay generally within the sedentary industrial demand capacity. Dr. Hogya further opined that the Injured Worker

should avoid the use of vibrating tools and hand tools such as hammers and wrenches. Dr. Hogya opined that the Injured Worker is capable of using his right hand on a frequent basis for operating a telephone, a keyboard or a computer mouse.

After having reviewed the medical evidence in the file, the Staff Hearing Officer is persuaded and finds based upon the aforementioned reports of Dr. Hogya and Dr. Lutz that the allowed conditions in the claim have reached maximum medical improvement and are permanent.

It is the further finding of the Staff Hearing Officer based upon the reports of Dr. Hogya and Dr. Lutz that the Injured Worker is not physically capable of returning to and performing his former position of employment as a truck driver due to the allowed conditions in his combined three claims.

It is the further finding of the Staff Hearing Officer based upon the reports of Dr. Lutz (07/29/2013) and Dr. Hogya (07/09/2013) that the Injured Worker is physically capable of returning to sustained remunerative employment.

Having concluded that the Injured Worker can return to and perform work within the restrictions identified by Dr. Lutz and by Dr. Hogya, the Staff Hearing Officer now turns to a discussion of the Injured Worker's vocational factors.

(Emphasis sic.)

{¶ 18} Finding that relator was physically capable of returning to some sustained remunerative employment within the restrictions noted by Drs. Lutz and Hogya, the SHO discussed the non-medical vocational factors. The SHO found relator's vocational factors to be positive, stating:

The Injured Worker is presently 60 years old. The Injured Worker last worked in any capacity when he was approximately 58 years old.

The Staff Hearing Officer finds that the Injured Worker is approximately five to six years away from the typical age of retirement. At the time the Injured Worker was last employed, he was approximately seven to eight years away from the usual age of retirement.

The Staff Hearing Officer finds that the Injured Worker's present age may be somewhat of a barrier for re-entering the work force or for undertaking further education/training. The Staff Hearing Officer further finds that the Injured Worker's present age would be expected to only slightly interfere with his ability to adapt to a new job or to a new work environment. The Staff Hearing Officer finds, however, that individuals of the Injured Worker's present age have sufficient time before reaching the regular age of retirement to acquire new job skills, at least through informal means such as short-term or on-the-job training that could enhance their potential for re-employment. The Staff Hearing Officer therefore finds and concludes that the Injured Worker's present age is only a slight impediment to his ability to return to work as identified by Dr. Lutz and by Dr. Hogya.

The Staff Hearing Officer further finds that the Injured Worker has the self-reported ability to read, write and perform basic math. The Staff Hearing Officer finds that these basic and fundamental intellectual assets are positive factors in the Injured Worker's ability to undertake further retraining, whether on-the-job or of a more formal and structured nature, that would permit a return to employment. The Staff Hearing Officer further finds that the Injured Worker's physical ability, as identified by Dr. Lutz in his report dated 07/09/2013 to use his right hand on a frequent basis for operating a telephone, a computer keyboard or a computer mouse is an additional positive factor in the Injured Worker's ability to undertake further retraining or to engage in employment within the restrictions identified by Drs. Lutz and Hogya.

The Staff Hearing Officer further finds that the Injured Worker's prior employment experience as a truck driver is a mixed vocational factor with respect to his ability to return to work within the restrictions identified by Dr. Hogya and by Dr. Lutz. The Staff Hearing Officer finds that the Injured Worker's work experience driving a truck is not a positive factor in evaluating his employment potential. The Staff Hearing Officer finds, however, that the Injured Worker's job experience consisting of completing log books and trip records and vehicle inspection reports is a positive vocational factor with regard to his ability to undertake further training, whether of an informal nature or a more formalized nature. The Staff Hearing Officer further finds that the Injured Worker's ability to complete log books and trip records and

inspection reports is a positive vocational asset with respect to returning to some form of sedentary work, such as clerical or basic computer work or work as a sit-down guard or greeter at an office building or warehouse.

* * *

The Staff Hearing Officer further finds that the Injured Worker has demonstrated a long, and consistent work history. The Staff Hearing Officer finds the Injured Worker's past commitment to steady employment to be a positive vocational factor.

Based upon the foregoing vocational factors, the Staff Hearing Officer is persuaded and finds that the Injured Worker retains some capacity to engage in sustained remunerative employment within the physical restrictions identified by Drs. Lutz and Hogya. The Staff Hearing Officer finds that the Injured Worker has the basic intellectual and physical skills necessary to perform some entry-level sedentary work, if so motivated, such as a parking lot attendant, a monitoring type of security guard or self-service cashier, a telephone solicitor/salesperson or a greeter at a store that could accommodate his walking and sitting restrictions.

{¶ 19} The SHO did discuss relator's decision to forgo any vocational or additional training, stating:

The Staff Hearing Officer further finds that the Injured Worker's decision to forgo any additional retraining or vocational rehabilitation is a voluntary choice unrelated to his industrial injury and thus a negative factor with regard to his permanent total disability application.

* * *

As noted by the Ohio Supreme Court on a number of occasions, permanent total disability compensation is compensation of last resort, payable only in the event of a demonstration of a loss of the entirety of the ability to engage in sustained remunerative employment; and, on a demonstration that the Injured Worker has made reasonable attempts to prepare himself for such work. In this case, neither such demonstration has been made by the Injured Worker.

{¶ 20} 9. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 21} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 22} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 24} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order

what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 25} Relator contends that the SHO created a "legal fiction" to find that he was capable of employment and that it is clear that the jobs the SHO identified (parking lot attendant, security guard, telephone solicitor, greeter) cannot be done within his medical restrictions and considering his disability factors. Relator contends that Ms. Williams properly considered the non-medical disability factors and found that he was not capable of performing some sustained remunerative employment.

{¶ 26} Relator cites several cases in support of his argument. Those cases include *State ex rel. Hutt v. Frick-Gallagher Mfg. Co.,* 11 Ohio St.3d 184 (1984), *State ex rel. Haddix v. Indus. Comm.*, 70 Ohio St.3d 59 (1994), *State ex rel. Pierce v. Indus. Comm.*, 77 Ohio St.3d 275 (1997), *State ex rel. Bruner v. Indus. Comm.*, 77 Ohio St.3d 243 (1997), and *State ex rel. Mann v. Indus. Comm.*, 80 Ohio St.3d 656 (1998). The magistrate does not find relator's argument persuasive.

{¶ 27} With the exception of the *Hutt* case, writs were granted in the above cases pursuant to *Noll.* In *Hutt,* decided prior to *Noll,* the Supreme Court of Ohio determined that the facts of that case were strikingly similar to the facts found in *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983). The court explained:

> In the instant case, as in that case, the reasoning forwarded by the commission in its order denying the claim and the reasoning now advanced upon appeal are markedly different. The order in the instant case simply stated that "the claimant is not permanently and totally disabled." The commission now argues that appellant is not permanently and totally disabled *as the result of the allowed conditions,* even though he may well be permanently and totally disabled as the result of previously existing conditions. "[T]his court has recognized that '* * * there must be a causal connection between an injury arising out of and in the course of a worker's employment and his harm or disability * * *[,]' *Gilbert v. Midland-Ross* (1981), 67 Ohio St.2d 267, 270 [423 N.E.2d 847, 21 O.O.3d 168] * * * " ( *id.* at 482, 453 N.E.2d 721). The commission's order, however, does not state the reason for denying compensation was that appellant's disability was not causally related to his injury. Instead it states that appellant does not suffer from permanent total disability. Following the rule established in *Mitchell,* this

unqualified conclusion will not be embellished but rather will be construed "in a single fashion." *Id.* at 483, 453 N.E.2d 721.

*Mitchell* also requires that the commission "specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, * * *." *Id.* at 483-484, 453 N.E.2d 721. Inasmuch as the commission mentioned four specific medical reports, it may be assumed that this requirement has been met. However, as noted in the statement of the facts, none of those four reports supported the conclusion that appellant was not permanently and totally disabled.

*Hutt,* at 185.

{¶ 28} In *Haddix,* the court found a *Noll* violation as follows:

The present order lists three nonmedical factors-age, education and work history. The commission was silent on the first, giving no clue as to whether claimant's age was viewed favorably or unfavorably. Its observation that claimant was sixty years old appears to be no more than that- a random factual observation with no significance attached one way or the other.

Education, on the other hand, was specifically deemed an obstacle to reemployment, so it does not support the transferable-skills theory. This leaves the commission's conclusion resting solely on claimant's work history.

The commission determined that claimant's prior work as a gas station attendant and press operator provided him with skills transferable to sedentary employment. The commission's order, however, does not identify what those skills are. Such elaboration is critical in this case, since common sense suggests that neither prior work is, in and of itself, sedentary.

The commission responds that it "inferred" from claimant's gas station job that claimant "perform[ed] a variety of duties, which would include such things as pumping gas, washing windows, dealing with customers at retail, making change, filling out credit card slips, operating a cash register, and light custodial work." Again, however, none of this explanation was stated in the order. Moreover, pumping gas,

washing windows and light custodial duties do not suggest sedentary employment.

The commission's order, contrary to *Noll,* does not, therefore, adequately explain how these vocationally neutral and/or unfavorable factors combine to produce a claimant who is able to work. Equally important, we are not convinced that such an explanation is possible. Claimant is now in his sixties. He did not attend even high school and has worked as a gas station attendant and press operator. We thus find relief consistent with *Gay* to be appropriate.

*Id.* at 61.

{¶ 29} In *Bruner,* the commission noted that the claimant was 59 years old, had obtained a GED, and had a work history consisting of maintenance work and window washer. Despite his work experience, the commission concluded that the claimant had sufficient vocational skills to obtain or be trained for sedentary or light employment, particularly relying on the claimant's attainment of a GED and the fact that there were positions available in the labor market at the unskilled, sedentary, and light level. The court found a *Noll* violation, stating:

The commission's order violates *Noll* because it does not explain how claimant's nonmedical factors combine to make him work-amenable. The commission's mere acknowledgement of claimant's age and education is not enough. * * *

The commission's discussion of claimant's work history is also inadequate. With increasing, and disturbing, frequency we are finding that no matter what claimant's employment background is, the commission finds skills-almost always unidentified-that are allegedly transferable to sedentary work. In some cases, depending on the claimant's background, these skills are self-evident. In many cases, they are not.

In *State ex rel. Haddix v. Indus. Comm.* (1994), 70 Ohio St.3d 59, 61, 636 N.E.2d 323, 324, we held:

"The commission determined that claimant's prior work as a gas station attendant and press operator provided him with skills transferable to sedentary employment. The commission's order, however, does not identify what those

> skills are. Such elaboration is critical in this case, since common sense suggests that neither prior work is, in and of itself, sedentary."

> The present claimant was an ironworker-a position that is neither sedentary nor light duty. Again, however, the commission found skills transferable to light work, without specifying what those skills were. The reference to supervisory skills, without more, is not enough in this case, given claimant's tenure as a working, as opposed to purely administrative, supervisor.

*Id.* at 277-78.

{¶ 30} In *Mann,* the court found a *Noll* violation, stating:

> The commission, in finding claimant capable of work, relies overwhelmingly on claimant's past employment. Its discussion is flawed because, despite excessive verbiage, it is no more than a recitation of claimant's nonmedical profile. The commission lists claimant's work history three times but never explains how those nonsedentary jobs equip claimant for a sedentary position. Moreover, the commission's reference to "sedentary low stress positions in the food services industry" merits further explanation. While the commission is generally not required to enumerate the jobs of which it believes claimant to be capable, its assertion that claimant could do low stress sedentary work in an industry that is traditionally considered neither low stress nor sedentary requires further exploration.

*Id.* at 659.

{¶ 31} In the above cases, the court found that the commission's orders failed to explain how, given their restrictions and non-medical disability factors, the claimants could perform some sustained remunerative employment. Specifically, in each case the commission had indicated that the claimants' work histories had provided them with "transferable skills"; however, the commission had failed to identify any transferable skills.

{¶ 32} Contrary to relator's assertions, the magistrate finds that the commission's order denying his application for PTD compensation does not suffer from the same deficiencies as the orders in the above cases did. The commission first determined that

relator's age, 60 years old, was only a slight impediment to his ability to return to work within the restrictions of Drs. Lutz and Hogya. The SHO explained that his present age would be expected to slightly interfere with his ability to adapt to a new job or new work environment, but that he had sufficient time before reaching the typical retirement age to acquire new job skills, at least through informal means such as short-term or on-the-job training to enhance his potential for re-employment.

{¶ 33} The SHO next noted that relator self-reported that he could read, write, and perform basic math and concluded that these were basic fundamental, intellectual assets to his ability to undertake further retraining, whether on the job or in a more formal and structured nature. The SHO further noted that relator was able to use his right hand on a frequent basis for operating a telephone, a computer keyboard or a computer mouse, and that this was an additional positive factor in his ability to undertake further retraining or to engage in employment within his restrictions.

{¶ 34} The SHO also found that relator's prior work experience was a positive factor noting that relator completed log books, trip records, and vehicle inspections. This was found to be a positive vocational aspect with regard to returning to some form of sedentary work, such as clerical or basic computer work, or work as a sit-down guard or greeter at an office building or warehouse. Thereafter, the SHO determined that relator had the basic intellectual and physical skills necessary to perform work as a parking lot attendant, monitoring type of security guard, or self-service cashier, or telephone solicitor/sales person, or as a greeter at a store that could accommodate his walking and sitting restrictions.

{¶ 35} Unlike the relator cites, here the SHO identified, discussed, and explained why the non-medical disability factors were found to be positive and permitted relator to return to some form of sustained remunerative employment. The SHO also identified skills which would transfer to sedentary work. The magistrate does not find this order to be deficient.

{¶ 36} Relator also argues that the specific jobs the SHO identified are clearly not sedentary. The SHO listed the following jobs: parking lot attendant, monitoring type of security guard, self-service cashier, and telephone solicitor/salesperson or a greeter at a store that could accommodate his walking and sitting restrictions.

{¶ 37} Contrary to relator's assertions, it is not obvious that these jobs are not sedentary. Relator's argument does not show an abuse of discretion on the part of the commission.

{¶ 38} Furthermore, the SHO noted that relator had decided to forgo any additional retraining or vocational rehabilitation and considered this to be a negative factor with regard to his application for PTD noting that such compensation was payable only where a claimant has entirely lost the ability to engage in sustained remunerative employment and upon demonstrating that the claimant had made reasonable attempts to prepare himself for such work. The commission and courts can demand accountability of claimants who, despite time and medical ability to do so, never try to further their education or learn new skills. *State ex rel. Bowling v. Natl. Can Corp.*, 77 Ohio St.3d 148 (1996). The commission may hold a PTD claimant accountable for their failure to take advantage of opportunities for rehabilitation or retraining. *State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250 (1997). This provides an additional explanation for why relator's application for PTD compensation was denied.

{¶ 39} Finding that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).